# UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEW JERSEY

M.L. KING, JR.  FEDERAL BUILDING

50 WALNUT ST., 3RD FLOOR

NEWARK, NEW JERSEY 07102

DONALD H. STECKROTH

BANKRUPTCY JUDGE

(973) 645-4693

Fax: (973) 645-2606

## NOT FOR PUBLICATION

**FILED**

JAMES J. WALDRON, CLERK

**MAY 11, 2011**

U.S. BANKRUPTCY COURT

NEWARK, N.J.

BY: s/ Ronnie Plasner, DEPUTY

May 11, 2011

## LETTER OPINION

## ORIGINAL FILED WITH THE CLERK OF THE COURT

Sterns & Weinroth, P.C.
Andrea Dobin, Esq.
50 West State Street, Suite 1400
P.O. Box 1298
Trenton, New Jersey 08607-1298
*Counsel for Plaintiffs*

Herold Law, P.A.
Gary S. Jacobson, Esq.
25 Independence Boulevard
Warren, New Jersey 07059
*Counsel for Defendant George J. Otlowski, Jr.*

Re:  **McHugh, et al. v. Otlowski et al.**
     **Adv. Proc. No. 10-02348 (DHS)**
     **In re NJ Affordable Homes Corp.**
     **Lead Case No. 05-60442 (DHS)**

Dear Counsel:

Defendant George J. Otlowski, Jr. ("Otlowski") has filed a motion seeking to enjoin prosecution of the above-captioned adversary proceeding against him pursuant to §§ 362(a)(1) and 105(a) of the Bankruptcy Code, because he alleges continuing prosecution threatens the administration of the NJ Affordable Homes Corp. ("NJAH" or "Debtor") bankruptcy estate.

Page 2
May 11, 2011

Otlowski argues that if he is forced to tender the defense to his liability insurers, it will provide grounds for termination of the Trustee Settlement Agreement ("TSA") approved by this Court. The TSA provides for the payment of substantial sums by the insurers to the Trustee. The Plaintiffs, Donald and Patricia McHugh ("McHughs" or "Plaintiffs") respond by asserting that: (1) they did not release their claims under the TSA and therefore no basis exists to deprive their right to seek recovery from Otlowksi, a non-debtor party; (2) the fact that Otlowski has settled claims with the Trustee does not prevent the Plaintiffs from prosecuting their independent claim against him; and (3) Otlowski neither provides evidence to support his assertion that the present action threatens the viability of the TSA nor that the TSA is even relevant to the instant proceeding as the Plaintiffs were not signatories to that agreement.

For the reasons that follow, the motion seeking an injunction is denied. The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. Venue is proper under 28 U.S.C. § 1409. The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## FACTS AND PROCEDURAL HISTORY

### I.    Defendant's Statement of Facts

Otlowski served as a closing attorney and/or settlement agent for NJAH. The Plaintiffs' Complaint alleges common law and statutory fraud claims against Otlowski arising out of a 2005 real estate transaction. The Complaint also alleges that Otlowski and his co-defendants engaged in a conspiracy.

In 2006, the Chapter 7 Trustee commenced an adversary proceeding based on substantially similar allegations against Otlowski and several co-defendants. (Cert. of Lynda A. Bennett in Supp. of Mot. to Enjoin Compl., ¶ 4) ("Bennett Cert.") Otlowski was also named as a defendant in an adversary proceeding brought by First United Mortgage Company ("First United") for negligence in connection with the financing of the Debtor's properties. (*Id.*) Ultimately, Otlowski was subject to cross-claims and third-party complaints in at least seventeen (17) adversary proceedings commenced by the Trustee. (*Id.*) While these actions were pending, Otlowski's insurance carriers commenced actions to establish that they had no duty to indemnify or defend particular claims related to his representation of NJAH. (*Id.* at ¶ 5)

In 2009, Otlowski resolved claims against him by entering into the TSA with the Trustee, First United, and his insurance carriers. The TSA provides for: (a) a buy-back of Otlowski's insurance policies; (b) a cash payment by the insurers to the Trustee; and (c) a general release of Otlowski and his insurers by the Trustee and First United. (*Id.* at ¶ 6) In addition, the Trustee

Page 3
May 11, 2011

was obligated to obtain various releases and dismissals in favor of Otlowski from several parties, including Washington Mutual ("WaMu"), which has an action against Otlowski presently on appeal in the state court  (*Id.* at ¶ 7)  The Trustee was also obligated to "use best efforts" to obtain releases or dismissals in any subsequent actions.  (*Id.*)

At the time the TSA was executed, the McHughs had no pending litigation claims against Otlowski.  (*Id.* at ¶ 9)  A previous action from 2006 had been dismissed on motion for failure to join indispensable parties.  (*Id.;* Cert. of Donald McHugh in Opp'n to Def.'s Mot., ¶ 5) ("McHugh Cert.")  Consequently, the McHugh litigation was not included on the list of pending actions in the TSA.  (Bennett Cert., ¶ 9)

If the Trustee fails to satisfy the provisions of the TSA, it is claimed Otlowski and/or his insurers have the right to terminate the agreement and require the Trustee to return all payments made by the insurers.  (*Id.* at ¶ 8)  The remainder of the TSA would also be void and unenforceable.  (*Id.*)  In light of the ongoing WaMu litigation, Otlowski asserts that the TSA has not yet reached its "Effective Date," as that term is defined in Paragraph 1.4, and remains subject to termination.  (*Id.* at ¶¶ 11-12)

## II.    Plaintiffs' Additional Facts

The Plaintiffs agree with most of the facts as set forth by Otlowski.  However, they dispute the characterization of the TSA as being central to the administration of the bankruptcy case.  The Plaintiffs point out that the insurance carriers were aware of the McHugh claims at the time the TSA was drafted.  Despite the fact that the 2006 action was dismissed "with the tacit understanding that it would be renewed at a later date," the TSA did not include it among the list of pending actions.  (Pl.'s Mem. of Law in Opp'n to Def.'s Mot., p. 4) ("Pl.'s Mem.")  At oral argument, Otlowski's counsel admitted that the McHugh action "fell through the cracks."

The Plaintiffs emphasize that the TSA merely requires the Trustee to "use best efforts" to obtain dismissals of any lawsuits filed against Otlowski outside of those actions listed therein. (*Id.*)  The failure to obtain any such dismissal does not give rise to termination rights.  (*Id.*) Accordingly, the Plaintiffs argue that the TSA is irrelevant to the present action and question the "cataclysmic" effects on the estate that are alleged by Otlowski.  (*Id.* at 5)

## DISCUSSION

Section 105(a) of the Bankruptcy Code serves as the basis for the Court's broad equitable power to do what is "necessary or appropriate to carry out the provisions" of the Code. 11 U.S.C. § 105(a); *United States v. Energy Res. Co.,* 495 U.S. 545, 110 S. Ct. 2139, 109 L. Ed. 2d 580 (1990).  The power, however, is not without limits.  A bankruptcy judge may not use section 105(a) to overrule other sections of the Code and the powers to be employed must ultimately be

Page 4
May 11, 2011

derived from the Code itself. *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.
Ct. 963, 968, 99 L. Ed. 2d 169, 179 (1988). The provision does not "authorize the bankruptcy
courts to create substantive rights that are otherwise unavailable under applicable law, or
constitute a roving commission to do equity." *United States v. Sutton*, 786 F.2d 1305, 1308 (5th
Cir. 1986).

The legislative history indicates that Congress intended to provide the bankruptcy courts
with the equitable power to enjoin certain actions that pose a threat to the estate but are not
covered by the automatic stay of 11 U.S.C. § 362. S. Rep. No. 989, 95th Cong., 2d Sess. 51
(1978), *reprinted in* App. Pt. 4(e)(i); H. Rep. No. 595, 95th Cong., 1st Sess. 341-42 (1977),
*reprinted in* App. Pt. 4(d)(i) ("Thus, the court will have to determine whether a particular action
which may be harming the estate should be stayed.). A common example of this equitable power
is the use of a third-party injunction in cases where pending litigation threatens the effective
reorganization of the debtor. *See* 2 COLLIER ON BANKRUPTCY ¶ 105.04[2] (Alan N. Resnick and
Henry J. Sommer eds., 16th ed.). This remedy can be particularly useful to channel certain
classes of claims to a specified fund, separate from the overall estate, or to prevent certain
actions against non-debtor parties that have the potential to jeopardize the successful
administration of the bankruptcy case.

Although the present case is not a reorganization case, Otlowski nevertheless relies on
*In re American Family Enterprises*, 256 B.R. 377 (Bankr. D.N.J. 2000) in support of his
position. He argues that, despite being a liquidation case, it is "characterized by findings of a
systemic fraud through a Ponzi scheme, having many of the characteristics of a mass tort case."
(Def.'s Mem. of Law in Supp. of Mot. to Enjoin, p. 9) ("Def.'s Mem.") In *American Family*, the
bankruptcy court applied the following five-factor test in considering a permanent injunction in
favor of third parties:

> (1) Identity of interest between the debtor and the third party,
> usually an indemnity relationship, such that a suit against the
> nondebtor is, in essence, a suit against the debtor or will deplete
> assets of the estate;
>
> (2) The nondebtor (or someone on his behalf) has contributed
> substantial assets to the reorganization;
>
> (3) The injunction is essential to the reorganization;
>
> (4) A substantial majority of the creditors agree to such an
> injunction, specifically, the impacted class, or classes, has
> "overwhelmingly" voted to accept the proposed plan treatment;
> and

Page 5
May 11, 2011

> (5) The plan provides a mechanism for payment of all, or substantially all, of the claims of the class or classes affected by the injunction.

*Am. Family,* 256 B.R. at 407.

Otlowski concludes that the first two factors are met because the insurers contributed significant assets to the estate through the buy-back transaction and that the Trustee would be forced to return those assets if the TSA falls apart, thereby making a suit against Otlowski effectively a suit against the estate. (Def.'s Mem. p. 9) Thus, Otlowski asserts that the third factor is met because an injunction is essential to prevent this from occurring. (*Id.*) The Court agrees that factor two is present because of the payments made to the estate pursuant the TSA.

Otlowski cites several additional cases where bankruptcy courts granted injunctions in favor of non-debtor parties. (Def.'s Mem., p. 9; *see, e.g., In re Zenith Laboratories, Inc.*, 104 B.R. 659, 666 (D.N.J. 1989); *In re United Health Care Org.* 210 B.R. 228, 233-34 (Bankr. S.D.N.Y. 1997); *In re Third Eighty-Ninth Associates*, 138 B.R. 144, 147-48 (Bankr. S.D.N.Y. 1992)). The cited cases are distinguishable, however, because each involves a case under chapter 11 and actions against the debtor's principals, officers, directors, or guarantors. *See also Gemini Equip. Bus. Trust v. First Union Nat'l Bank (In re Equip. Bus. Trust)*, 2005 U.S. Dist. LEXIS 28968, *10 (M.D. Pa. Nov. 14, 2005) ("courts may enjoin proceedings against a non-debtor third party defendant under [11 U.S.C.] § 105 where there is such identity between the debtor and that third party defendant that debtor may be said to be the real party defendant and that a judgment against the third party defendant will, in effect, be a judgment against the debtor.") Moreover, in the cases cited by Otlowski, it was the debtor seeking an injunction rather than the non-debtor party. In contrast, the NJAH bankruptcy is a chapter 7 case with no reorganization effort, Otlowski himself is neither involved in the administration of the estate nor a guarantor, and the Chapter 7 Trustee is not seeking the injunction.[1]

Significantly, the terms of the TSA do not create the type of identity between Otlowski and the estate normally found to support the issuance of an injunction. Rather, the TSA contemplates future actions (such as the within action against Otlowski) and merely obligates the Trustee to use "best efforts" to obtain dismissals of such actions. (Bennett Cert., Ex. A (TSA), ¶ 2.5(b)) If the Trustee ultimately fails to obtain any such dismissals, this does not automatically allow the parties to terminate the TSA and does not obligate the Trustee to return settlement

---

[1] *But see Altman v. Davis & Dingle Family Dentistry (In re EZ Pay Servs.),* 389 B.R. 751, 753 (Bankr. M.D. Fla. 2007). Otlowski cites this case in support of the proposition that permanent injunctive relief is available in the chapter 7 context when an action threatens to deplete the estate. The *EZ Pay* court relied on the four elements of a traditional non-bankruptcy preliminary injunction standard in reaching its decision to grant relief under § 105(a). The McHughs distinguish *EZ Pay* on the basis that it was the chapter 7 Trustee who sought an injunction in that case.

Page 6
May 11, 2011

funds. (*Id.*) Therefore, the Court is not persuaded that the first *American Family* factor is satisfied by Paragraph 2.5(b) of the TSA and that the necessary identity of interest exists or that assets of the estate will be depleted. In addition, it is clear that factors four and five are inapplicable in the chapter 7 context.

Finally, the Court is left to consider the third factor: the necessity of an injunction to the successful administration of the estate and final resolution of the bankruptcy case. As Otlowski notes, Paragraph 2.6 of the TSA obligates the Trustee to "exercise best efforts" to obtain releases from WaMu within sixty (60) days of the approval of the TSA. (Bennett Cert., Ex. A (TSA), ¶ 2.6) The Trustee has failed to secure such releases in over two years. Otlowski argues that this provision gives him an independent right to terminate the TSA if he is forced to tender a defense to the McHugh Complaint. He argues that an injunction is essential to prevent termination and the subsequent return of the settlement funds presently held by the Trustee for the benefit of the estate. As with Paragraph 2.5(b), however, Paragraph 2.6 employs the term "best efforts" in describing the nature of the Trustee's obligations. Clearly, the TSA does not provide for an absolute right to terminate following the sixty (60) day period.

Ultimately, it is well-settled that bankruptcy courts may enjoin actions against non-debtor parties in order to protect the assets and administration of an estate. However, such extraordinary relief is simply not warranted in this instance. Tellingly, the Trustee has decided not to take a position in the instant matter. Although he is not a party to the McHugh action, the Trustee advises the Court that he is nevertheless aware of the issue before it and does not agree with Otlowski's interpretation of the TSA. If the continuation of the action in this forum or in the state court had the potential to derail the entire bankruptcy case, as suggested by Otlowski, it would be extremely unlikely for the Trustee to voluntarily remain on the sidelines. Although Otlowski asserts an ability to terminate the TSA under Paragraph 2.6 for the Trustee's failure to obtain releases from WaMu, it is clear that the TSA only requires the Trustee to "exercise best efforts" to that end. While, the TSA does not define "best efforts," the Court notes that the Trustee has been working diligently towards a resolution of over four hundred NJAH adversary proceedings, including the WaMu litigation.

## **CONCLUSION**

The Court is not convinced that allowing this litigation to proceed will significantly affect the administration of the underlying bankruptcy case. Accordingly, Otlowski's motion to enjoin prosecution of the adversary proceeding is hereby denied.

Page 7
May 11, 2011


An Order in Conformance with this Opinion has been entered by the Court and is attached hereto.

Very truly yours,

s/    *Donald H. Steckroth*

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Enclosure